IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALP INDUSTRIES, LLC, <br>         Plaintiff <br><br> v. <br><br> FREDERICK FULCHINO and <br> ST. PIERRE MANUFACTURING <br> CORPORATION, <br>         Defendants | : <br> : <br> : CIVIL ACTION NO. _____ <br> : <br> : <br> : JURY TRIAL DEMANDED <br> : <br> : <br> : |

## **COMPLAINT**

### *Parties*

1.  Plaintiff ALP Industries, LLC, ("ALP Industries") trading through its division, Cable Works, is a Pennsylvania limited liability company with a principal place of business at 512 N. Market Street, Suite 100, Lancaster, Pennsylvania, 17603.

2.  Defendant Frederick Fulchino ("Fulchino") is an adult individual whose last known address is 283 Orchard Hill Road, Pomfret, Connecticut, 06259.

3.  Defendant St. Pierre Manufacturing Corporation ("St. Pierre") is a corporate entity with a its principal place of business at 317 East Mountain Street, Worcester, Massachusetts, 01606.

4.  Both ALP Industries and St. Pierre are the in the business of manufacturing and providing wire and cable products to various customers throughout the United States. ALP Industries and Defendant St. Pierre are business competitors in the wire and cable business.

## *Jurisdiction and Venue*

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, because ALP Industries has asserted a claim for statutory misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.

6. Injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65.

7. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because a contract ("the Contract") between ALP Industries and Defendant Fulchino was signed in this judicial district, and the Contract itself contains a choice of law/forum selection clause, wherein the Plaintiff and Defendant Fulchino agreed that all actions involving the interpretation of the Contract shall be brought in the state or federal courts having jurisdiction over Lancaster County, Pennsylvania.

8. Personal jurisdiction is proper for Defendant Fulchino for the reasons set forth in paragraph seven (7).

9. Personal jurisdiction is proper for Defendant St. Pierre because it regularly sells products throughout the United States, and in particular, through Walmart and Dick's Sporting Goods, both of which have retail establishments in Lancaster County and throughout the Eastern District of Pennsylvania.

## *Factual Background*

10. Defendant Fulchino was an employee of ALP Industries for many years, and was promoted to a leadership sales position in 2022. As part of that promotion, he received an increased salary in return for entering into a Non-Disclosure, Non-Competition and Non-Solicitation Agreement (the Contract) on March 20, 2022. A copy of the Contract is attached to and made a part of this Complaint as Exhibit A.

11. As a prominent employee in the sales department of ALP Industries, Defendant Fulchino had extensive access to confidential information of ALP Industries, including, but not limited to, the company's pricing and marketing strategies, its profit margins, its methods of operation and sales, its costs, its customer list, its distributors, its suppliers, and its fabrication and production processes.

12. On February 7, 2023, Defendant Fulchino was terminated from the employment of ALP Industries, because of, *inter alia* numerous infractions of company policy, and because he was creating a very antagonistic workplace environment for fellow employees.

13. The next day, ALP Industries learned that Defendant Fulchino had already approached Defendant St. Pierre, seeking employment.

14. On February 10, 2023, through counsel, ALP Industries advised both Defendants St. Pierre and Fulchino, of the Contract, and placed both on notice in

writing that any violations of the Contract would be enforced by ALP Industries. Copies of the letters are attached to and made a part of this Complaint as Exhibit B.

15. On March 10, 2023, ALP Industries was informed that Defendant St. Pierre hired Defendant Fulchino and that his employment would start on March 17, 2023. His new position was in sales.

16. Not long after Defendant Fulchino began work with Defendant St. Pierre, St. Pierre and Fulchino began to engage in an aggressive sales campaign with customers of ALP Industries, most of whom it had never done business with before, or with whom it did very limited business that was different than ALP Industries business with that customer.

17. While employed at ALP Industries, Defendant Fulchino was aware, through his own work with customers of ALP Industries that he serviced within his geographical area, of ALP Industries pricing information and profit margins. He also was aware of that information concerning other ALP Industries' customers outside of his assigned geographical area in New England.

18. Not surprisingly, Defendants St. Pierre and Fulchino's approaches to various ALP Industries' customers were to supply the very items that ALP Industries supplied to those customers, and its pricing was significantly lower than that of ALP Industries.

19. Some, but not all, of ALP Industries' customers who were contacted in March and April of 2023, were United Steel, in East Hartford, Connecticut,

Cashman Dredging in Quincy, Massachusetts, Daniel Marr & Son Company in Braintree, Massachusetts, and InCord in New Haven, Connecticut.

20. On information and belief, it is believed that other approaches to ALP Industries' customers have been made by St. Pierre and Fulchino, the present extent to which ALP Industries at this time is unaware, using confidential pricing information, customer lists and profit margins that Defendant Fulchino has given to Defendant St. Pierre. These approaches are a direct effort to undercut ALP Industries' pricing, and to take away the business of ALP Industries and to transfer it to Defendant St. Pierre.

21. Most recently, Defendant St. Pierre is pursuing ALP Industries' supplier of steel wire to establish distribution deals, which include USHA Martin and Bethlehem Wire Rope Inc., a Pennsylvania corporation.

22. ALP Industries also has learned that Defendant Fulchino has been recently contacting an ALP Industries warehouse driver, Dan Orlowski, in an effort to continue to obtain confidential information about ALP Industries and its distributors.

### COUNT I – UNFAIR COMPETITION
### (PLAINTIFF v. ALL DEFENDANTS)

23. The Plaintiff incorporates Paragraphs 1-22 into Count I.

24. On information and belief, the Defendants directly and intentionally used confidential pricing information and profit margin information of ALP Industries, to cause economic injury to ALP Industries.

25. The Defendants took these steps for the purpose of *inter alia*:

    a. Causing financial harm to ALP Industries;

    b. Diverting ALP Industries' customers to Defendant St. Pierre; and

    c. Misappropriating/converting ALP Industries' Confidential Information for their own benefit, to the detriment of ALP Industries.

26. The above described actual and/or threatened conduct of the Defendants is the direct and proximate cause of immediate and irreparable harm to ALP Industries.

27. The Defendants' actual and/or threatened actions will continue to cause ALP Industries irreparable harm if not enjoined, as well as monetary damages that are incalculable at this time.

WHEREFORE, ALP Industries respectfully requests judgment in its favor and against the Defendants, as set forth in its Prayer for Relief.

## COUNT II – BREACH OF CONTRACT
## (PLAINTIFF v. DEFENDANT FULCHINO)

28. The Plaintiff incorporates Paragraphs 1-27 into Count II.

29. In Paragraph 2 of the Contract, Defendant Fulchino agreed that during his Employment, and for twenty-four (24) months thereafter, he would not

> "communicate, divulge or disclose for the benefit of Employee, or for any other person, business, or entity, any trade secret, proprietary or confidential information…otherwise obtained by Employee during employment."

30. As described above, Defendant Fulchino has violated the Contract, and ALP Industries has suffered monetary damages in an amount to be determined.

31. In Paragraph 5 of the Contract, Defendant Fulchino acknowledged that:

> "Employer's remedy at law for actual or threatened breach of any of the foregoing obligations will be inadequate and that Employee agrees and consents that, in addition to any other right which Employer may have at law or in equity, that temporary, preliminary or permanent injunction may be granted against Employee at any proceeding which may be brought to enforce any of the provisions of this Agreement, without proof of actual damage."

32. "Confidential Information" was defined in Paragraph 1 to mean, among other things:

> "information which is treated by the Company as confidential and which has not been made generally available to the public or to competitors of Company (other than by fault of Employee), and includes but is not limited to the Company's pricing and marketing strategies, profit margins, methods of operation and sales, sources of supplies, costs, fabrication and production processes, any proprietary computer programs or course code, and customer information such as names, contact persons and information, customer needs and requirements…"

33. ALP Industries, pursuant to the Contract, is entitled to recover its attorney's fees incurred in enforcing the Contract.

WHEREFORE, ALP Industries respectfully requests judgment in its favor, and against Defendant Fulchino, as set forth in its Prayer for Relief.

## COUNT III – MISAPPROPRIATIONS/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE DEFEND TRADE SECRETS ACT of 2016, 18 U.S.C. § 1836(b)(1)
### (PLAINTIFF v. ALL DEFENDANTS)

34. The Plaintiff incorporates Paragraphs 1-33 into Count III.

35. While employed by ALP Industries, Defendant Fulchino obtained access to ALP Industries' confidential trade secret information.

36. The trade secret information retained by Defendant Fulchino is related to ALP Industries pricing, profit margins, distributors, suppliers, customers list and sales programs, and placed Defendant Fulchino in a position to undercut ALP Industries in the marketplace through the use of that information with his new employer, Defendant St. Pierre.

37. As set forth in their Contract, ALP Industries considers this type of information to be confidential and proprietary, and it took reasonable steps through the Contract to maintain the confidential nature of this information, as well as through its Handbook. A copy of §1.5 of the Handbook, "Confidential Information," is attached to and made a part of this Complaint as Exhibit C.

38. Upon information and belief, the Defendants have utilized that information and are continuing to try to use ALP Industries' confidential, proprietary and trade secret information to remove or divert ALP Industries' business to Defendants Fulchino and St. Pierre. In doing so, the Defendants are maliciously and willfully using misappropriated confidential, proprietary and trade secret information to their own advantage in direct competition with ALP Industries.

39. Upon information and belief, Defendant Fulchino directed, participated and/or benefited from the misappropriation of ALP Industries' trade secrets.

40. As a result of the Defendants' misappropriation and use of the confidential, proprietary and trade secret information, the Defendants have violated the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1)).

41. The Defendants' violation of the Defend Trade Secrets Act of 2016 was willful, wanton and malicious and was taken with reckless disregard for the rights of ALP Industries.

42. As a direct and proximate result of the Defendants violation of the Defend Trade Secrets Act of 2016, ALP Industries has sustained substantial and irreparable harm and damages in an incalculable amount that ALP Industries will attempt to establish.

43. The above-described acts and/or threatened conduct of the Defendants is the direct and proximate cause of immediate and irreparable harm to ALP Industries.

44. The Defendants' actual and/or threatened actions will cause ALP Industries irreparable harm if not enjoined, as well as monetary damages that are incalculable at this time.

WHEREFORE, ALP Industries respectfully requests judgment in its favor and against the Defendants, as set forth in its Prayer for Relief.

## COUNT IV – MISAPPROPRIATIONS/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
## (PLAINTIFF v. ALL DEFENDANTS)

45. The Plaintiff incorporates Paragraphs 1-44 into Count IV.

46. At all times material, the Defendants knew, and were placed on notice, that ALP Industries' Confidential Information is deserving of trade secret protection under the Pennsylvania Uniform Trade Secrets Act, 12 Cons. Stat. § 5301 et seq.

47. ALP Industries invested substantial resources to create, compile and maintain this confidential information:

    a. The information is not known outside of ALP Industries;

    b. ALP Industries takes significant steps to safeguard the confidentiality of this information;

    c. The information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense; and

    d. ALP Industries' Confidential Information is of significant value to ALP Industries and is extremely important to its business, and would be extremely valuable to Defendant St. Pierre, its direct competitor.

48. ALP Industries disclosed its Confidential Information to Defendant Fulchino while he was in a position of trust and confidence and under circumstances that make it inequitable and unjust for him to have misappropriated that information to be used for his own benefit and for the benefit of Defendant St. Pierre.

49. By copying, taking, using and/or disclosing ALP Industries' Confidential Information, the Defendants have misappropriated ALP Industries' trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act.

50. Pennsylvania Uniform Trade Secrets Act provides for injunctive relief in the case of "actual or threatened" misappropriations of a trade secret. 12 Pa. Con. Stat. § 5303(a).

51. The Defendants' actions in converting and misappropriating ALP Industries' confidential, proprietary and trade secret information for their own gain was willful, wanton and malicious, and was taken with reckless disregard for the rights of ALP Industries.

52. Upon information and belief, Defendants Fulchino and St. Pierre directed, participated, and/or benefited from the Defendants' misappropriation of ALP Industries' trade secrets.

53. In the alternative, if ALP Industries' Confidential Information does not constitute trade secrets within the meaning of the Pennsylvania Uniform Trade Secrets Act, and it does, the Defendants are nonetheless liable for the wrongful conversion of such confidential and proprietary materials.

54. The above-described actual and/or threatened conducts of the Defendants is the direct and proximate cause of immediate and irreparable harm to ALP Industries.

55. The Defendants' actual and/or threatened actions will continue to cause ALP Industries irreparable harm if not enjoined, as well as monetary damages that are incalculable at this time.

WHEREFORE, ALP Industries respectfully requests judgment in its favor and against the Defendants, as set forth in its Prayer for Relief.

## COUNT V – UNJUST ENRICHMENT
### (PLAINTIFF v. ALL DEFENDANTS)

56. The Plaintiff incorporates Paragraphs 1-55 into Count V.

57. In the alternative to Count II, in the scope of his employment, ALP Industries conferred the benefit of its Confidential Information on Defendant Fulchino.

58. Defendant Fulchino utilized the Confidential Information to make sales in his role with ALP Industries, resulting in significant financial reward and remuneration.

59. Upon information and belief, Defendant Fulchino has retained and utilized ALP Industries' Confidential Information after the end of his employment and continues to use said Confidential Information to Defendants' direct benefit and ALP Industries' detriment.

60. After the conclusion of his employment, Defendant Fulchino has furthered his own interests, as well as the interests of Defendant St. Pierre, ALP Industries' direct competitor. Consequently, the Defendants have benefited from the foregoing conduct and it would be unjust for the Defendants to retain said benefit without consideration to ALP Industries.

61. As a direct and proximate result of the foregoing, ALP Industries has suffered, and will continue to suffer, great injury and loss, all to the direct gain of the Defendants.

62. As a direct and proximate result of the Defendants' wrongdoing, ALP Industries is suffering immediate and irreparable harm.

WHEREFORE, ALP Industries respectfully requests judgment in its favor and against the Defendants, as set for in its Prayer for Relief.

## COUNT VI – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS AND/OR CONTRACTUAL RELATIONSHIP
### (PLAINTIFF v. ALL DEFENDANTS)

63. The Plaintiff incorporates Paragraphs 1-62 into Count VI.

64. The Defendants knowingly and willfully interfered with, and continue to interfere with, the relationship between ALP Industries and its customers by soliciting ALP Industries' customers away from ALP Industries to St. Pierre with the use of ALP Industries Confidential Information.

65. The Defendants were and are fully aware that the solicited ALP Industries' customers share an advantageous business and/or contractual relationship with ALP Industries and that ALP Industries relied on those arrangements for its financial prosperity.

66. At all times material, Defendants Fulchino and St. Pierre were aware of, yet disregarded, the contractual obligations Defendant Fulchino owed to ALP Industries under his Contract.

67. The above-described actual and/or threatened conduct of the Defendants is the direct and proximate cause of immediate and irreparable harm to ALP Industries.

68. The Defendants' actual and/or threatened actions will continue to cause ALP Industries irreparable harm if not enjoined, as well as monetary damages that are incalculable at this time.

WHEREFORE, ALP Industries respectfully requests judgment in its favor, and against the Defendants, as set forth in its Prayer for Relief.

## APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION AGAINST THE DEFENDANTS

69. The Plaintiff incorporates Paragraphs 1-68 into this Application for Preliminary and Permanent Injunction Against the Defendants.

70. A plaintiff seeking an injunction must show: (1) a likelihood of success on the merits; (2) a threat that plaintiff will suffer irreparable harm if the injunction is denied; (3) granting preliminary relief will not result in even greater harm to the defendant; and (4) the injunction is in the public interest. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008); *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015); *see also Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010).

71. ALP Industries' verified pleading demonstrates that (i) Defendants have engaged in wrongful acts that provide ALP Industries with causes of action; (ii) ALP Industries has a probable right to relief; and (iii) absent injunctive relief,

ALP Industries will suffer irreparable harm and probable injury for which there is no adequate remedy at law.

72. ALP Industries is willing to post bond as deemed reasonable and necessary by the Court.

### A. Wrongful Acts

73. As shown in the paragraphs above and attached documents, Defendant Fulchino, breached his duties and legal obligations to ALP Industries after his employment by stealing and/or misappropriating ALP Industries' confidential/proprietary information and trade secrets, working to benefit himself and the interests of a competitor, and using ALP Industries' confidential/proprietary information and trade secrets to solicit ALP Industries' customers and suppliers to benefit his new employer.

### B. Likelihood of Success

74. ALP Industries is entitled to injunctive relief because it can demonstrate a likelihood of success on the merits. This requires a movant to present a *prima facie* case. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). In so doing, a plaintiff must "show[ ] a reasonable probability of success on the merits." *American Express Travel Related Svcs., Inc. v. Sidamon– Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). This requires a showing "significantly better than negligible, but not necessarily more likely than not." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

75. As set forth above, the verified facts in the instant pleading confirm

that Defendants have, and will continue to, use/disclose ALP Industries' confidential/proprietary information and trade secrets and solicit/divert ALP Industries' customers and business relationships. Thus, based on its evidence to date, there is a reasonable probability of success on the merits of ALP Industries' claims against Defendants.

### C. Probable Irreparable Injury

76. Injunctive relief is appropriate where a plaintiff will suffer probable injury that is imminent and irreparable. Generally, "'to show irreparable harm a plaintiff must demonstrate a potential harm which cannot be redressed by a legal or equitable remedy following a trial.'" *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). In other words, the injury "'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

77. Here, if allowed to continue unfairly competing against ALP Industries and soliciting its customers while armed with its trade secrets and confidential information, Defendants will continue to irreparably harm ALP Industries in the form of ALP Industries' loss of business relationships, its goodwill and competitive advantage which it worked to achieve for decades and at great expense.

### D. Balance of Harm

78. The threatened injury to ALP Industries if a preliminary and permanent injunction is not granted outweighs any potential harm caused to the

Defendants. The Defendants' continued wrongful conduct will result in ALP Industries facing a substantial risk of losing customers it otherwise would have had and an erosion of its goodwill, losses that are difficult or impossible to quantify by monetary damages.

79. Defendants include a former high-level salesman of ALP Industries, who has engaged in improper competition against ALP Industries. The Defendants will not be substantially harmed by the issuance of a preliminary and permanent injunction as, under such injunctions, they would be required to conduct their business as they always should have – lawfully. Thus, the balance of the equities favors the issuance of injunctive relief.

### E. Public Interest

80. In exercising sound discretion, a court of equity should pay particular attention to the public consequences in employing the extraordinary remedy of injunction. "The purpose of an injunction is to remove the advantage created by the misappropriation." *See* 12 Pa. Cons. Stat. Ann. § 5303(a) ("Actual or threatened misappropriation may be enjoined."); 18 U.S.C. § 1836(b)(3)(A)(i) (a court may grant an injunction "to prevent any actual or threatened misappropriation"); *see also Bimbo Bakeries USA, Inc.*, 613 F.3d at 114 ("the proper inquiry . . . is whether there is sufficient likelihood or substantial threat of a defendant disclosing trade secrets [and confidential information]") (internal quotations omitted). Moreover, where the likelihood of success on the merits and irreparable harm elements are satisfied by the moving party, issuing an injunction necessarily serves the public good. *See*

*Reilly,* 858 F.3d at 177-78 Here, not only have Defendants actually – and already – have misappropriated ALP Industries' confidential information, and the granting of a preliminary and permanent injunction serves the public interest by depriving Defendants of the benefit of unfairly competing in violation of their legal obligations and, in so doing, enforces better business ethics by depriving the alleged wrongdoers of the benefit of their wrongdoing. *See e.g., Bimbo Bakeries, USA, Inc.,* 613 F.3d at 118–19.

### F. Request for Injunctive Relief

81. In light of the foregoing, ALP Industries requests that the Court grant it a preliminary injunction and at an appropriate time, a permanent injunction, to:

(1) Enjoin Defendants, their agents, servants, and all other persons acting in concert with Defendants from contacting ALP Industries' current or former customers, prospects, suppliers or distributors, and/or accepting business from ALP Industries' current and/or former customers, prospects, suppliers or distributors and/or diverting the patronage of ALP Industries' current or former customers or prospects; and

(2) Compel Defendants to cease and refrain from using any ALP Industries documents, information, data, files, or other materials; and

(3) Compel Defendants to immediately return to ALP Industries all originals and copies of any documents, information, data, files, or other materials in any form, that Defendants, individually or collectively, took, copied, caused to be taken or copied, or received from ALP Industries; and

(4) Enjoin the Defendants, and all persons in active concert or participation with any of them, from directly or indirectly:

(a) Engaging in any other conduct that will cause or is likely to cause confusion, mistake, deception, or misunderstanding as to the affiliation, connection, or association or origin, sponsorship, or approval of their businesses, products, or services with or by the Company; and

(b) Using any trade practices, including those complained of in this Verified Complaint, that tend to unfairly compete with or injure the ALP Industries, its business and the goodwill appertaining thereto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ALP Industries respectfully requests that, due to the ongoing, and clearly unlawful acts of the Defendants, the Court:

(1) Issue a preliminary injunction and at an appropriate time, a permanent injunction;

(2) Award ALP Industries compensatory damages, disgorgement of Defendants' profits, treble damages, punitive damages, and statutory damages resulting from Defendants' conduct.

(3) ALP Industries further prays that the Court will award ALP Industries costs of suit and attorney's fees as appropriate pursuant to statute and the Contract, as well as other remedies and just relief the Court deems appropriate.

## JURY DEMAND

ALP Industries demands a jury on issues so triable.

## DEMAND TO PRESERVE EVIDENCE

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to ALP Industries, Fulchino, or ALP Industries' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Respectfully submitted,

Date: 8/23/23

By: _____
Mark E. Lovett, Esquire
Attorney I.D. No. 41071
Alicia E. Muir, Esquire
Attorney I.D. No. 332021
BRUBAKER CONNAUGHTON GOSS & LUCARELLI LLC
480 New Holland Avenue, Suite 6205
Lancaster, PA 17602
Telephone: (717) 945-5755
Facsimile: (717) 945-5764
Email: markl@bcgl-law.com
*Attorneys for Plaintiff*